## M. L. Overstreet and J. L. Overstreet v. Ed. P. Dunlap.

1. VERDICT—*When Conclusive.*— The question as to whether the maker of a note signed it under duress, is one of fact for the determination of a jury, and where the evidence is conflicting, their verdict will ordinarily settle the matter.

2. EVIDENCE—*Want of Consideration.*— Where a person charged another with stealing his hogs, and compelled him to sign a promissory note under fear of imprisonment, in an action upon the note by such person, it is proper for the defense to introduce any evidence tending to

Overstreet v. Dunlap.

show the falsity of the charge, as bearing on the question of whether the payee had a claim adequate to support a compromise therefor, on the issue of a want of consideration of the note.

3. WITNESSES—*Impeachment of — Limit of the Examination.*—If a witness, sworn for the purpose of impeachment, testifies that he is not acquainted with the general reputation of the person sought to be impeached, for truth among his neighbors, he should not be allowed to testify further on the subject.

4. IMPEACHMENT—*What Constitutes a Good Reputation.*—A good reputation may be known without its being generally discussed among the neighbors; it excites no general discussion.

5. TRIAL—*Limiting Impeaching Witnesses.*—The action of a judge in attempting to limit the number of impeaching witnesses by saying to the attorney of the party calling them, that if he called any more, it would be at his expense, is not erroneous, as an intimation by the court that the character of the person attacked had been sustained.

6. DURESS—*Person Pleading Must Have Acted as a Reasonable Man.* —The 'fact' that a person pleading duress as a defense to a promissory note, did not act as a reasonable man would have done under the circumstances, has no application where the note is still in the hands of the person charged with the duress and the action is brought by him.

**Memorandum.**—Assumpsit. In the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding. Declaration on a promissory note; the pleas are stated in the opinion of the court; trial by jury; verdict and judgment for defendant; appeal by plaintiff. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

J. A. McKENZIE and A. M. BROWN, attorneys for appellants.

APPELLEE'S BRIEF, THOMPSON & SHUMWAY AND F. F. COOKE, ATTORNEYS.

Appellee contended that where there is no moral or legal obligation to make good another's loss, there is no consideration for a settlement. There must be a claim sustainable in law or equity to sustain a settlement. If it was utterly without foundation, the consideration fails. Knotts v. Preble, 50 Ill. 226; Mulholland v. Bartlett, 74 Ill. 58; Chitty on Contracts, p. 35; 1 Parsons on Contracts, p. 437.

When a contract is procured to be executed under a threat of arrest under a warrant, it is void not only because

of duress but because it is against public policy to permit abuse of process. Bane v. Dieterich, 52 Ill. 20; Spaids v. Barrett, 57 Ill. 292; Henderson v. Palmer, 71 Ill. 579; Shank v. Phelps, 6 Brad. 613; Schommer v. Farwell, 56 Ill. 543.

Mr. Presiding Justice Lacey delivered the opinion of the Court.

This was a suit commenced by confessing judgment by virtue of a power of attorney annexed to a promissory note given by appellee to appellants, dated July 18, 1893, for $420, due one day after date, with seven per cent interest after July 4, 1893, until paid, with $25 as attorney fees, and a credit on the back of the note of $20, of the same date of the note. The judgment was opened up at the next October term of the Circuit Court, 1893, at the instance of appellee, and he was given liberty to plead to the merits, which he did in two pleas: first, want of consideration; second, duress, in that appellants falsely accused appellee of stealing their hogs, and with one I. N. Coakley, marshal of the city of Galesburg, Ill., threatened to arrest appellee and put him in jail unless he would sign the said note; denied the stealing of the hogs and the charge was wholly false; and that by reason of such threats and in fear thereof the appellee made and executed the note in question, etc.

The appellants filed replication to the first plea, averring the note was given on a settlement of a claim for hogs which appellants had lost to the value of $600, and which he accused appellee of having taken, and appellee admitting having taken some of appellant's hogs but not so many as claimed, gave the note in question in settlement of such dispute, etc.

Second replication to first plea, in substance the same, and avers appellants had been induced by the settlement to make no further search for the hogs they claimed to have lost.

Replication to the second plea takes issue on the allegation of duress by the threats mentioned in the plea. Ap-

pellee filed two special rejoinders to the first and second replications which were demurred to and demurrer sustained, and appellee assigns cross-error as to the action of the court. These rejoinders were a departure from the matter set up in the replications and conclude with a verification, whereas appellee should have simply taken issue to all material parts of the replications and concluded to the country.

It will not be necessary for us to consider the question further in the view we take of the case. Besides these rejoinders, issue in proper form was taken on the replications. The case was tried by a jury resulting in a verdict for defendant. Motion by appellants for new trial was overruled by the court and judgment rendered against them for costs. From this judgment this appeal is taken. The circumstances of giving the note in suit are about as follows: The appellant M. L. Overstreet, is the father of J. L. Overstreet; the former lived in Galesburg and owns a farm some two miles and a half from it, of which his son J. L. had charge in the summer and fall of 1892; they owned in partnership 115 head of hogs and shoats, which were kept on the farm and in charge of the son. The latter made a visit to Florida about November 10, 1892, and returned about the 1st March, 1893; while he was absent he left them in charge of George Overstreet, grandson of M. L. and nephew of J. L. Overstreet. Dunlap, appellee, lived about one half mile from Overstreet's farm, and George Overstreet boarded with him a part of the time while his uncle was gone to Florida; then one Bengston moved in, November 13, 1892. George Overstreet boarded at Dunlap's about two weeks, and then on the farm. He did not understand that any of the hogs were gone until his uncle returned from Florida. Soon after John's return he and his father discovered, or thought they did, that about thirty of their hogs had disappeared. They then consulted I. N. Coakley, the city marshal of Galesburg, and agreed to give him $50 if he would assist them in discovering who had taken the hogs. Coakley made an investigation and communicated the result to appellants, the sum of which was that he was informed by Wilkins Secord

that appellee had sold two bunches of hogs, one bunch of forty and one of forty-two, and the fact that appellee did not recognize him at the time he saw Coakley talking to Overstreet in Holcum's office, and did not thereafter until the former saw him at Goff's.

On the 18th July, 1893, M. L. Overstreet and Coakley got into a buggy with him and went out north, and they met appellee opposite Frank Goff's barn, who was a brother-in-law of appellee, and there they requested a private interview and went into Goff's barn with him, and there accused him of stealing or of taking, as appellant insists, appellant's hogs, and demanded that appellee pay for them, and that he sign two judgment notes, which Overstreet had taken with him already prepared, one for $420 and one for $50, the latter to compensate him for Coakley's fee as detective. Considerable conversation and dispute ensued in regard to this matter, the result of which was appellee signed the larger of the two notes, the one in suit, and Overstreet indorsed a credit on it of $20 at the time, and the other note was not signed.

What was said and done at this interview was a matter of contention on the trial, Coakley and M. L. Overstreet testifying that appellee admitted, in substance, taking the hogs, but claimed they were not worth so much as appellant, M. L. Overstreet, claimed, but finally signed the note in question. Appellants claim this to have been a conclusive compromise of a disputed claim, made in good faith, especially as to the amount, they claiming appellee virtually admitted his liability for the hogs taken, or a portion of them. The appellee, on the other hand, testified that he did not, at that interview, admit that he took the hogs, but denied it, and claimed that he signed the note in consequence of threats on the part of M. L. Overstreet and Cookley, that they would arrest him and send him to the penitentiary unless he signed the note, and Coakley claimed to have the papers then and there to arrest him, which most influenced him to sign the note. In this, appellee was supported by the testimony of his sister, Mrs. Goff, who claims that she

sat at her west window in the kitchen, and looked in at the east barn door, where she could see the parties, or some of them, and heard a portion of the conversation, which, if her statement is true, goes far to corroborate appellee. Then appellee is corroborated as to some of the particulars, by Frank Gripp, who was carrying water for hayers, and passed the barn, and saw Coakley with a red book in his hand, and held it up as though he was going to read; all the parties were together in the barn; he heard nothing said. This statement corroborates appellee somewhat as to what Cookley did at the time. Appellee testified that Coakley said at the time: "From the confessions you have made to Overstreet, it will send you to Joliet for ten years, and I want you to make this settlement at once, or I will arrest you at the crack of the whip." He stepped back eight or ten feet and said, "I have the papers here that will arrest you, and the papers that will convict you." He held the paper up so that he could see there were three or four inches of writing on it, etc. The appellee produced a number of witnesses by whom he showed that he had, of his own, more hogs than he had sold, and how he obtained them, and by one witness who helped him take the lot of forty-one he had sold to Albert Felt, 1st March, 1893. And he sold another lot of twelve hogs, April 17, 1893, to same party. The evidence shows that the information Coakley received, that appellee had sold one lot of forty and one of forty-two hogs was incorrect. This was a very insufficient foundation on which to base a charge of larceny in the first place; and when appellee accounted for all the hogs he had sold, then there was nothing on which to base even a suspicion, in a reasonable mind, that appellee had taken appellants' hogs.

Appellants had an opportunity, if they could, to show by circumstances or otherwise that appellee was probably guilty, which, had it been done, would have greatly strengthened their case. Appellee informed J. L. Overstreet the next day after the note was signed he would not pay it, and M. L., on the 27th July, the month in which the note was given. He testified he only gave the note to escape

arrest and until he could prove where he got his hogs. The only evidence on which appellants can rely is the supposed admissions of appellee that he took the hogs; and this is contradicted as above stated. The jury had all the evidence and facts and circumstances before them, and reached a conclusion supported, as appears to us, by a great preponderance of the evidence. It is very unreasonable to suppose that a party against whom there was not evidence enough to raise a suspicion in a reasonable mind of the larceny of the hogs would admit the taking of them.

In the excitement, what appellee said could be very easily misunderstood. And under all the circumstances, that he intended to make an admission of guilt is hardly probable.

If appellee did not admit the taking of appellants' hogs, there is nothing in the evidence to support a claim on which to base a compromise. There is no evidence even tending to show that appellee took the hogs in question, unless he admitted it, as claimed by appellant M. L. Overstreet, and his detective witness, Coakley.

Under the circumstances it is so improbable that appellee made such admissions that we think the jury could scarcely have found otherwise than for appellee.

It is insisted on part of appellants' counsel that the issue was not whether the appellee stole appellants' hogs, but it was, did appellants believe appellee had appropriated the hogs, and did appellee admit he had taken some of them. If appellee took the hogs under the circumstances charged, the act was undoubtedly larceny without any mitigating circumstances. It was a cold-blooded, calculating theft. As we have said, aside from the supposed admissions, there was no evidence against appellee.

We think the jury were also fully warranted in finding the issues in the duress of appellee in signing the note in his favor. The fact that M. L. Overstreet went with an officer and took appellee off in a private place was well calculated to impress his mind and create alarm. And the fact that the officer was a paid detective, having $50 depending on his success, was well calculated to induce the belief in

Overstreet v. Dunlap.

the minds of the jury that he would press appellants' demands with great energy, and that appellee's contention that he threatened arrest was more than probable. We can not find any fault with the verdict of the jury in that behalf.

Appellants insist that the court erred in allowing appellee to rebut the charge that he had taken any of appellants' hogs by showing what hogs he sold and what he owned, and where he got them, and to show that he in fact sold his own hogs and not appellants. There was no error in this. While it may not have been a direct issue it had a most important bearing on the question of whether appellants had any claim adequate to support a compromise, and therefore on the issue of want of consideration of the note. It tended directly to support that issue, and it was one of the most important facts in the case on that issue; and if the evidence should clearly show that appellee did not take or steal appellants' hogs it would be very difficult to bring a reasonable mind to the conclusion that he ought to pay appellants for their loss. There would be no justice in his doing so, and it would be very difficult, under such circumstances, for a jury to believe that appellee admitted taking the hogs, or that he signed the note without duress, and unlawful pressure.

The appellants made an attempt to impeach appellee by showing a bad reputation for truth and veracity among his neighbors, and appellee called a large number to show such reputation among his neighbors was good. Some of the witnesses being asked whether they were acquainted with appellee's reputation for truth and veracity in the neighborhood where he lived replied in the negative, while at the same time they had lived in the neighborhood and were well acquainted with him. Then they were asked if they had ever heard anything said against his reputation in that particular among his neighbors. This was objected to by appellants' counsel and the court overruled the objection and the witnesses answered they had not. This is assigned for error. It was undoubtedly erroneous for the court to allow

it. If a witness answer he is not acquainted with a person's general reputation for truth among his neighbors then he should not be allowed to testify further on the subject. But many witnesses seem to understand that in order to be acquainted with one's reputation for truth and veracity it is necessary that he should have heard it often discussed. This, however, is not necessary. It may be known without its being generally discussed. A good reputation excites generally no discussion or comment, yet every one may know that he is generally reputed to be truthful. Gifford v. The People, 148 Ill. 173.

It was doubtless this idea that induced counsel to try to make the witness understand what was meant by general reputation, and undertook in a negative way to show that he was acquainted with it and because it had not been discussed it was good. It was irregular for the court to admit this and all like questions, and was error, but we can not see that it was of so serious a nature as to require the judgment to be reversed in consequence. We can not see how the jury could have been seriously misled by knowing that a witness or witnesses had not heard appellee's character for truth discussed among his neighbors, or in fact anywhere. The action of the court in trying to limit appellee's impeaching witnesses by telling his counsel that if he called any more witnesses it would be at his own expense, we do not think erroneous. It is not any intimation by the court that appellee's character for truth had been sustained, only that a repetition of witnesses might not add strength to his support.

Appellants complain of appellee's seventh and ninth instructions.

We do not think they are erroneous. The seventh instruction, taken as a whole, does not tell the jury, as is supposed, that the issue was whether appellee took the hogs of appellants. It tells the jury if he did not take them, it must find for appellee. " Unless it (the note) was given in settlement, as stated in former instructions." The other instruction explained that matter. In the ninth instruction,

the court tells the jury that to have taken the hogs of appellants, knowing them to be theirs, and appropriating them to appellee's use, was a crime. The jury are not told that anything should follow from that fact. The mere fact that the jury were told the taking of the hogs under the circumstances would be a crime, could not prejudice appellants' case. It was proper for the jury to understand this, as it doubtless would, without any instruction, and to weigh the fact in connection with all other evidence in the case as bearing on the probability of appellee taking the hogs; presumptions are always against the commission of crime. The appellants complain of the refusal of the court to give their rejected instructions seven, eight and nine. Seven and nine have relation to the evidence in regard to appellee's taking the hogs not being on any issue in the case. This evidence was touching a very important matter and the evidence mentioned therein tended to prove a direct issue, and the instructions were too restrictive, and liable to mislead. The eighth offered and refused instruction tells the jury that if appellee did not act as a reasonable man in resisting duress, he can not claim duress in signing the note in suit, and the jury must find in favor of appellants. The note was not indorsed, and his being guilty of carelessness ought not to preclude him from setting up duress as against the payees of the note, and then there was the issue of want of consideration to be tried which the question of duress did not directly affect. The fact, if it was one, that appellee did not act as a reasonable man in yielding to threats in signing the note, might be a circumstance from which the jury might find he did not yield and sign the note on that account, but it is not an estoppel to the plea of duress. The given instructions were all that were necessary to give the jury an adequate idea of the law and the issues it was to try.

Feeling satisfied that substantial justice has been done in the case, and no serious error was committed by the court, the judgment of the Circuit Court is affirmed.